**UNITED STATES of America,
Appellee,**

v.

**Allan A. HANDLER, Appellant.**

**In the Matter of the Contempt Citation against Grand Jury Witness, Allan A. Handler, Appellant.**

**No. 584, Docket 72–2447.**

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1973.

Decided April 3, 1973.

Lawrence Stern, New York City, for appellant.

Michael C. Eberhardt, Sp. Atty., U. S. Dept. of Justice, Joint Strike Force, S. D. N. Y. (Whitney North Seymour, Jr., U. S. Atty., and John W. Nields, Jr., Asst. U. S. Atty., New York City, on the brief), for appellee.

Before FEINBERG, MULLIGAN and TIMBERS, Circuit Judges.

TIMBERS, Circuit Judge:

Allan A. Handler appeals from a summary order of civil contempt entered against him as a grand jury witness on December 1, 1972 in the Southern District of New York by Murray I. Gurfein, *District Judge,* ordering that he be confined pursuant to 28 U.S.C. § 1826(a) (1970) for refusal to answer questions before a grand jury after having been granted immunity under 18 U.S.C. §§ 6002 and 6003 (1970).

The issues on appeal are directed exclusively to the procedure which led to Handler's current confinement for contempt. He claims a denial of due process at various points in that procedure. We find such claims to have been after-

thoughts which even as forethoughts would have been unproductive. We affirm.

## I.

On August 22, 1972, a special grand jury was empanelled in the Southern District of New York to investigate gambling activities in violation of 18 U.S.C. § 1955 (1970).

On October 30, Handler, then serving a prison term on a state gambling charge, was subpoenaed to testify before the federal grand jury. He refused to answer any questions, invoking his privilege against self-incrimination.

On October 31, upon application by the government, Judge Weinfeld entered an order granting immunity to Handler under 18 U.S.C. §§ 6002 and 6003, thereby precluding the use against him in any criminal proceeding of his testimony before the grand jury.[1]

On November 1, despite the order granting him immunity, Handler again refused to answer any questions before the grand jury. He continued his refusal on November 2 when, accompanied by counsel, he was brought before Judge Weinfeld.

Handler next appeared before the grand jury on November 22. He again asserted his Fifth Amendment privilege and refused to answer each question asked of him before the grand jury. The government then applied to Judge Gurfein, before whom the grand jury had appeared, to adjudge Handler in contempt and to order him confined in accordance with 28 U.S.C. § 1826(a) (1970).[2]

---

[1]. Those sections provide:

"§ 6002. **Immunity generally**

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

"§ 6003. **Court and grand jury proceedings**

(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

[2]. "§ 1826. **Recalcitrant witnesses**

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

On November 29, following submission by the government of a brief in response to the court's inquiry as to the proper procedure,[3] Judge Gurfein entertained the government's contempt application. Handler, in the presence of his counsel, was given an opportunity to state why he should not be held in contempt. In addition to a statement by his counsel, Handler himself responded in pertinent part:

> "[B]efore I went up to the Grand Jury, two Federal Agents . . . told me that if I testified in the Grand Jury pertaining to this case, the people, whatever it might be, that they felt that I was in some danger and they would move me to a different part of the country, if I wanted to, relocate me.
>
> \*　\*　.\*　\*　\*　\*
>
> All my family ties, and so on, are in that community. Excuse my expression, but I would have to—based on what the Federal Agents told me—I would have to almost be a little paranoid for the rest of my life . . . .
>
> Because of this, I don't want to get myself involved in something like this and look back over my shoulder for the rest of my life based on what the agents told me, that is the reason I didn't testify."

Judge Gurfein informed Handler that he had not stated a legal excuse, and that his refusal to testify constituted a wilful contempt. Handler was then given one further opportunity to answer questions. He persisted in his unwillingness to testify. Judge Gurfein adjudged him in

contempt. He was ordered confined until such time as he is willing to testify; but his confinement is not to exceed the expiration of the grand jury term plus extensions, and in no event is it to exceed sixteen months.[4] An order so providing was entered on December 1, 1972.

## II.

■ Handler's first challenge to his civil contempt confinement is that he was not given prior notice of the nature of the proceedings against him. The essence of his contention is that at no time was he *formally* apprised that he was being charged with civil contempt, nor was he ever notified of the specific charge against him. We reject this claim as factually incorrect.

Handler's reliance on Parker v. United States, 153 F.2d 66 (1 Cir. 1946), is misplaced. There the court said that "[t]he respondent is entitled to due notice of the nature of the proceeding against him—whether of criminal or civil contempt." 153 F.2d at 70. Nowhere in that opinion or in any other case that has come to our attention, however, has it been said that "due notice" means *formal* notice. See, e. g., In re Guzzardi, 74 F.2d 671, 673 (2 Cir. 1935) ("[I]t is of at least some practical consequence to the respondent in such a proceeding to know whether he is charged with crime . . . . We do not say that this must be known at the outset; *it is enough if it becomes manifest in season* . . . .") (L. Hand, J.) (emphasis added). Here, there can be little doubt that Handler had actual notice of the nature of the proceedings

---

(1) the court proceeding, or
(2) the term of the grand jury, including extensions,
before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months."

3. On November 22, upon the government's request that Handler be placed in custody for civil contempt, Judge Gurfein expressed concern whether confinement could be ordered "without papers and without a notice and specifications." He adjourned

the proceeding to allow the government to submit a brief addressed to the requirements of due process in a summary civil contempt proceeding.

4. The sixteen months limitation, rather than the statutory maximum of eighteen months, 28 U.S.C. § 1826(a), was arrived at by Judge Gurfein as a "rough approximation" of the estimated two months "good time" credit against his state sentence which Handler had lost as the result of his involvement in the instant case.

against him. As early as November 2 (the date of his third refusal to testify), Handler's counsel informed Judge Weinfeld as follows:

"Your honor, I represent the defendant and have gone over the situation with him. He persists in his position and refuses to testify in spite of the grant of immunity. I have informed him that if he does 'not, your Honor has the power to punish him for contempt and to give him a sentence up to possibly eighteen months or maybe more, and the defendant is still adamant in his refusal to testify."

Following Judge Weinfeld's inquiry directed to Handler himself, he confirmed that he was aware that a wilful contempt was being committed.

Two important conclusions may be drawn from that exchange. First, it is clear that Handler had actual knowledge of the specific acts for which he was exposing himself to contempt. Second, counsel's reference to "eighteen months" indicates an awareness of the applicability of Section 1826(a)—the federal civil contempt statute. The record also establishes beyond question that Handler knew that any punishment would be remedial only, in that it would cease immediately upon his agreeing to testify.

It should also be borne in mind that, since Section 1826(a) · specifically provides for summary contempt procedure, certain concessions to ideal process necessarily must be made. "The same considerations which justify the holding of civil contempt proceedings, absent the safeguards of indictment and jury . . ., warrant reasonable expedition of such proceedings. . . ." United States v. Weinberg, 439 F.2d 743, 746 (9

Cir. 1971). See also Shillitani v. United States, 384 U.S. 364, 370–71 (1966).

In the light of Handler's actual knowledge of the nature of the contempt proceedings against him, we hold that he was not denied due process by the failure to provide formal notice.

### III.

Handler's next claim goes to the conduct of the contempt hearing itself. In particular, he argues that, not only did the court fail to require any proof of the legitimacy of the grand jury investigation or of the materiality to that investigation of the questions asked of Handler, but that the court in fact refused to entertain the government's offer of such proof.[5] His contention that such conduct of the contempt hearing constituted a denial of due process is based largely on his reading of United States v. Dinsio, 468 F.2d 1392 (9 Cir. 1972), and In re Vericker, 446 F.2d 244 (2 Cir. 1971). We find both cases readily distinguishable. We hold that Handler was not denied a fair hearing.

Section 1826(a) provides for confinement of a recalcitrant witness where the refusal to testify is *"without just cause shown."* (emphasis added). That language seems rather clearly to place on the witness the burden of coming forward with "just cause". In Gelbard v. United States, 408 U.S. 41 (1972), for example, the Court held that the government is required to respond to an allegation by a recalcitrant grand jury witness that the questions asked were based on information obtained by an illegal wiretap. Cf. Bacon v. United States, 466 F. 2d 1196 (9 Cir. 1972). Similarly in *Dinsio*, the witness' refusal to submit finger and palm print exemplars to a

---

5. At the hearing on November 29, the following exchange took place:
   "[Special Atty] Shaw: Your Honor, I think I should put on the record that I myself have had occasion to review the Grand Jury proceedings involving the Grand Jury operation and I can represent to the Court that each of the questions asked of Allan Handler as read by Mr. Lorber here directly related to subjects of that Grand Jury investigation and that the questions do certainly fall within the scope of the immunity that was granted.
   The Court: I don't think you need any statement of materiality. If you did, you would have to have the foreman testify as to what the matters were that were pending before the Grand Jury."

grand jury was based on specific constitutional objections to the request. In the present case, on the other hand, Handler completely failed to make a prima facie showing of "just cause".

*Vericker* more directly addresses itself to the specific issue raised by Handler. There immunity had been granted under 18 U.S.C. § 2514 (1970) which provides for transactional immunity for witnesses in cases involving certain offenses. We reversed the civil contempt judgment on the ground that there was nothing in the questions asked to indicate that the grand jury was investigating any crime within the permissible grant of immunity. Here no such claim has been made; and, under the less restrictive provisions of Sections 6002 and 6003, none apparently could be made. In *Vericker,* moreover, we made the point which we regard as dispositive here:

> "[T]he decisions are virtually unanimous in holding or assuming that the witness may challenge whether the subject matter of a grand jury investigation is consonant with the statutory authorization for the grant of immunity and that, *upon such a challenge,* the Government must make at least a modest showing that it is." 446 F.2d at 247 (emphasis added).

■ Handler having failed to assert a challenge of that sort, we hold that he was not denied a fair hearing by the court's failure to require the government to prove legitimacy or materiality.

### IV.

Handler claims that in two other respects the procedure which led to his confinement denied him due process of law: the denial of a jury trial on the contempt charge, and the absence of counsel at the hearing at which immunity was granted. We find no merit in either claim.

■ The question whether there is a right to trial by jury on a civil contempt charge was settled in Shillitani v. United States, *supra,* 384 U.S. at 370–71, where the Court said, "[t]he conditional nature of the imprisonment—based entirely upon the contemnor's continued defiance—justifies holding civil contempt proceedings absent the safeguards of indictment and jury, . . . provided that the usual due process requirements are met." We find unpersuasive the distinction between *Shillitani* and the instant case suggested by Handler. While it is true that *Shillitani* did not involve an order of confinement with a specified maximum term, it is also true that in the instant case the "keys to the jailhouse" are as much in the contemnor's pocket as in *Shillitani*—the confinement, in other words, is equally conditional. We hold that Handler was not entitled to a jury trial on the civil contempt charge. Bacon v. United States, 446 F.2d 667, 668 (9 Cir. 1971), vacated on other grounds, 408 U.S. 915 (1972).

■ Similarly, Handler's contention that he was denied assistance of counsel at the October 31 hearing at which he was granted immunity rests on a misplaced reliance on United States v. Sun Kung Kang, 468 F.2d 1368 (9 Cir. 1972). There the court reversed a civil contempt order which was entered after the district court had refused to grant an indigent defendant's request for representation by appointed counsel at the *contempt proceeding.* In the instant case, the only point at which Handler was without counsel was at the benign stage where *immunity* was granted. We have found no authority, and we perceive no reason, to support Handler's claim that the absence of counsel at the time immunity was granted constituted a deprivation of any constitutional right.[6] While the better practice would

---

6. At the argument of this appeal, we raised the question as to precisely how Handler claims to have been prejudiced by the absence of counsel at the immunity hearing. We granted leave to file a supplemental brief with respect to this issue. Handler argues in his post-argument brief that he was prejudiced by the *in camera* sealing of the government's application for immunity, the supporting affidavit and let-

be to have a witness represented in such a hearing, the record shows that Handler was informed on October 30 of his right to be represented by counsel at the grand jury proceedings and that he was accompanied by counsel at all times following the grant of immunity.

We have carefully considered all of Handler's claims and we find them—separately and in the aggregate—to be without merit.[7]

ter, and the grant of immunity—all at a time when he was without counsel. We are not persuaded that any prejudice resulted. Nothing in the immunity statute suggests that Handler would have been entitled to view the sealed papers even if counsel had been present, or that counsel could have challenged the sealing itself. The only point at which substantive objections might have been interposed was at the contempt hearing itself, Bursey v. United States, 466 F.2d 1059, 1073 (9 Cir. 1972), at which time Handler's counsel was present and had access to the rather conclusory information contained in the sealed documents. Further, a motion to unseal the documents was not made until two weeks after entry of the contempt order. The documents since have

been included in the record on appeal. In short, in addition to the other deficiencies in Handler's denial of counsel claim, we hold that he has failed to show prejudice.

7. In ruling as we do, we emphasize at the same time the remedial nature of Handler's confinement. The importance of that fact is the recognition of Handler's continuing right to petition the district court for release if it appears that he is no longer able to comply with the order to testify, or if the public necessity that led to the grant of immunity and the order to testify should cease to exist. Cf. Shillitani v. United States, *supra*, 384 U.S. at 371–72 (ordering the release of the witness because the grand jury term had expired). That is a matter within the province of the district court, not ours.