**In re Robert Reginald KILGO.**

**No. 73-2015.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 30, 1973.

Decided Sept. 6, 1973.

Henry L. Belsky, Baltimore, Md., (London, Potler & Belsky, Baltimore, Md., on brief) for Robert Reginald Kilgo.

Charles L. Weintraub, Sp. Atty., U. S. Dept. of Justice (George Beall, U. S. Atty., D. Md., on brief) for the U. S.

Before BUTZNER, RUSSELL, and WIDENER, Circuit Judges.

BUTZNER, Circuit Judge:

In this appeal, Robert R. Kilgo challenges certain aspects of the procedure followed by the district court in adjudicating him to be in civil contempt under the General Immunity Act of 1970 [18 U.S.C. §§ 6001–6005]. After Kilgo refused to answer questions before a grand jury investigating gambling, the district court, on application of the govermnent, granted him immunity and ordered him to testify. Because Kilgo persisted in his refusal, the court adjudged him to be in contempt and ordered his confinement pursuant to 28 U.S.C. § 1826(a).[1] On appeal, Kilgo asserts that the immunity order, on which the contempt citation rests, is invalid for the following reasons: the government failed to disclose why his testimony was necessary to its investigation of organized crime; neither he nor the court was apprised of the basis of the United States attorney's conclusion that his testimony was necessary to the public interest; he was entitled to be told the nature of the inquiry before the grand jury in more detail than by a mere reference to the statutes pertaining to gambling; he was entitled to counsel and to be advised of his right to counsel at the immunity hearing; and 18 U.S.C. § 6003 is unconstitutional. Finding no merit in any of these assignments of error, we affirm.

I

In 1970, Congress enacted a general immunity statute which has been codified as 18 U.S.C. §§ 6001–6005. Section 6003, dealing with court and grand jury proceedings, provides that a district court shall issue an order requiring a witness to testify before a grand jury upon application of the United States attorney made with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, when, in the judgment of the United States attorney, the testimony may be necessary to the public interest and the witness has refused, or is likely to refuse to testify on the basis of his privilege against self-incrimination.[2] Section 6002 grants the witness use immunity—that is, neither his testimony,

1. Title 28 U.S.C. § 1826. "Recalcitrant witnesses

(a) Whenever a witness in any proceeding before or ancillary to any court or grand jury of the United States refuses without just cause shown to comply with an order of the court to testify or provide other information, including any book, paper, document, record, recording or other material, the court, upon such refusal, or when such refusal is duly brought to its attention, may summarily order his confinement at a suitable place until such time as the witness is willing to give such testimony or provide such information. No period of such confinement shall exceed the life of—

(1) the court proceeding, or

(2) the term of the grand jury, including extensions,

before which such refusal to comply with the court order occurred, but in no event shall such confinement exceed eighteen months."

Subsection (b) limits bail pending appeal and directs that the appeal be expedited.

2. Title 18 U.S.C. § 6003. "Court and grand jury proceedings

(a) In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a court of the United States or a grand jury of the United States, the United States district court for the judicial district in which the proceeding is or may be held shall issue, in accordance with subsection (b) of this section, upon the request of the United States attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) A United States attorney may, with the approval of the Attorney General, the Deputy Attorney General, or any designated Assistant Attorney General, request an order under subsection (a) of this section when in his judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

nor any information directly or indirectly derived from his testimony, may be used against him in any criminal case other than in a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.[3]

In the application for an order granting Kilgo immunity and compelling him to testify before the grand jury, the United States attorney alleged that in his judgment the testimony of the witness was necessary to the public interest, that Kilgo—after having been advised of his privilege against self-incrimination—had refused to testify on the basis of this privilege, and that the application was made with the approval of the Assistant Attorney General in charge of the criminal division of the Department of Justice.[4]

### A

 Kilgo's contention that the government was obligated to show that his testimony was necessary to the government's investigation of organized crime warrants only brief comment. Although Sections 6001–6005 were enacted as a part of Title II of the Organized Crime Control Act of 1970,[5] the provisions of the Act dealing with immunity are not limited to investigations of organized crime. Title II was enacted to provide a general immunity statute, and it replaced numerous disparate immunity laws scattered throughout the United States Code.[6]

Section 6003 refers to "any individual who has been . . . called to testify . . . *at any proceeding* before . . . a grand jury . . . ." [emphasis added] There is no clause in the statute requiring the government to show that the grand jury's inquiry is related to organized crime or that the witness's testimony is necessary for an investigation of this limited scope. Nor is there any justification in the legislative history for restricting the statute. Indeed, the legislative history is to the contrary; the statute was intended to be available for the investigation of any crimes for which designated prosecuting authorities certified its utility.[7] We hold, therefore, that the district court did not err by entering the immunity order without requiring the government to show that Kilgo's testimony was necessary to an investigation of organized crime.

### B

 In its immunity order, the district court found that in the judgment of the United States attorney Kilgo's testimony was necessary to the public interest. Kilgo claims that the court erred because the government offered no evidence pertaining to the public interest.

No case interpreting the public interest provision of the 1970 Act has been

---

3. Title 18 U.S.C. § 6002. "Immunity generally.

 Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—
 (1) a court or grand jury of the United States,
 (2) an agency of the United States, or
 (3) either House of Congress, a joint committee of the two Houses, or a committee or a subcommittee of either House,
 and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony

or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."

4. The assistant attorney general in charge of the criminal division of the Department of Justice is specifically authorized to approve applications for immunity under 18 U.S.C. § 6003 by 28 C.F.R. § 0.175 (1970).

5. Pub.L. 91–452, Title II, § 201(a), Oct. 15, 1970, 84 Stat. 926 (1970).

6. II Working Papers, National Commission on Reform of Federal Criminal Laws 1444 (1970) (hereafter cited as Working Papers), lists 53 statutes governing immunity prior to the enactment of the 1970 Act.

7. II Working Papers 1405 (1970).

called to our attention. However, cases construing analogous requirements in earlier immunity statutes establish that the district court is not empowered to review the United States attorney's judgment that the testimony of the witness is necessary to the public interest. The leading case is Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956), which construed the Immunity Act of 1954 [18 U.S.C. § 3486][8] dealing with grand jury inquiries involving national security. That Act also limited grants of immunity to witnesses whose testimony, in the judgment of the United States attorney, was necessary to the public interest. The Court, recognizing the potential constitutional question that would arise if the judiciary reviewed the merits of immunity, construed the statute to withhold from the district court "any discretion to deny the order on the ground that the public interest does not warrant it." 350 U.S. at 432, 76 S.Ct. at 503. It held that the function of the district court was limited to ascertaining whether the application complied with the statutory requirement—that is, had the United States attorney certified that in his judgment the testimony of the witness was in the public interest. Accord: In re Bart, 113 U.S.App.D.C. 54, 304 F.2d 631, 635 (1962). A similar interpretation has been given to the public interest provision of 18 U.S.C. § 2514 [Omnibus Crime Control and Safe Streets Act of 1968].[9] In re Shead, 302 F.Supp. 569 (N.D.Cal.1969), aff'd sub nom Carter v. United States, 417 F.2d 384 (9th Cir. 1969), cert. denied, 399 U. S. 935, 90 S.Ct. 2253, 26 L.Ed.2d 807 (1970). Correspondingly, § 6005 of the 1970 Act precludes a court from reviewing the propriety of congressional authorization of immunity. In re Application of United States Senate Select Committee on Presidential Campaign Activities, Misc. No. 70–73 (D.D.C., June 12, 1973).

The drafters of the 1970 Act left no doubt that the construction given to the public interest provision in previous immunity acts was to be applied to § 6003,[10] and the legislative history confirms the limited role of the court.[11] Because the Act does not authorize the district court to review the United States attorney's judgment that the testimony of the witness may be necessary to the public interest, no evidence pertaining to this judgment need be offered. We hold, therefore, that the court did not err in accepting without proof the government's allegation relating to the public interest.

C

■ The application for immunity alleges that Kilgo refused to answer questions concerning violations of 18 U.S.C. §§ 371, 1952, and 1955.[12] It did not in any other way identify the inquiry of the grand jury. At the immunity hearing the government offered no other proof or explanation of the scope of the grand jury's investigation. Kilgo complains that the bare statutory reference

---

8. Title 18 U.S.C. § 3486 was repealed by the 1970 Immunity Act, Pub.L. 91–452, Title II, 228(a), Oct. 15, 1970, 84 Stat. 930.

9. Title 18 U.S.C. § 2514 was repealed, effective Dec. 15, 1974, by the 1970 Immunity Act, Pub.L. 91–452, Title II, §§ 227(a), 260, Oct. 15, 1970, 84 Stat. 930, 931.

10. The drafters of the Act, when discussing the utility of a court order and the constitutionality of the procedure to be followed in conferring immunity, said:

"A court order requirement will be harmless, however, if Federal district courts continue to view their role here as being solely ministerial—i. e., service as a recording agency. This approach was outlined in the leading case of Ullmann v. United States, 350 U.S. 422 [76 S.Ct. 497, 100 L.Ed. 511] (1956), sustaining the constitutionality of the initial court order requirement statute, 18 U.S.C. § 3486(c), concerning grand jury investigation and national security." II Working Papers 1435 (1970).

11. "The court's role in granting the order is merely to find the facts on which the order is predicated." H.Rep.No.91–1549, 91st Cong., 2d Sess., U.S.Cong. & Admin.News, pp. 4007, 4018 (1970).

12. Section 1955 prohibits certain gambling activities; § 1952 pertains to travel and transportation in aid of racketeering enterprises; and § 371 is the general conspiracy statute.

to the subject matter of the grand jury's investigation is insufficient to advise him of the type of activity the government is inquiring about and involves him in "a guessing game as to whether or not to answer questions."

■ Kilgo's contention fails to distinguish between use immunity, which is the basic concept of the 1970 Act, and transactional immunity, which was afforded by older statutes. Use immunity prohibits the witness's compelled testimony and its fruits from being used in any manner in connection with criminal prosecution of the witness. See Murphy v. Waterfront Commission of New York, 378 U.S. 52, 79, 84 S.Ct. 1594, 12 L.Ed. 2d 678 (1964). On the other hand, transactional immunity accords immunity to the witness from prosecution for the offense to which his compelled testimony relates. See Kastigar v. United States, 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

■ The 1970 Act differs from the older transactional immunity statutes because it does not create a defense to specific criminal charges. Instead, the Act provides a ground for suppressing the direct or indirect use of compelled evidence in any criminal prosecution save those mentioned in the statute, but prosecution may still go forward on legitimate independent evidence. Thus, § 6002 affords protection coextensive with the scope of the fifth amendment privilege against compulsory self-incrimination. After a witness has been granted use immunity under § 6002, both the witness and the prosecutor are left in virtually the same position regarding future prosecutions of the witness as if the witness had been permitted to stand upon his claim of the fifth amendment. Kastigar v. United States, 406 U.S. 441, 462, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972).

A number of cases dealing with transactional immunity have required the government to show in at least some detail the subject matter of the grand jury investigation. E.g., Bursey v. United States, 466 F.2d 1059 (9th Cir. 1972); In re Vericker, 446 F.2d 244 (2d Cir. 1971); and In re Bart, 113 U.S.App.D. C. 54, 304 F.2d 631 (1962). In this respect, these cases furnish no precedent for construing the 1970 Act because they interpreted statutes which authorized transactional immunity for the investigation of only certain specified offenses. Although these statutes also granted a species of use immunity, the courts, quite naturally, were concerned with whether the investigation and the consequent transactional immunity conformed to the restrictions imposed by the Congress.[13] Under transactional immunity statutes a problem of either unduly restricting evidence or of impermissibly extending immunity could arise when an investigation expanded to include subject matter for which the witness might not be expressly immunized by the terms of the grant.[14] For this reason, courts conducted hearings to determine whether the investigation, including the questions asked the witness, were confined to the bounds drawn by the statute.[15] This problem, which is

---

13. For example, in In re Vericker, 446 F.2d 244, 247 (2d Cir. 1971), the court said, "In any event the decisions are virtually unanimous in holding or assuming that the witness may challenge whether the subject matter of a grand jury investigation is consonant with the statutory authorization for the grant of immunity and that, upon such a challenge, the Government must make at least a modest showing that it is." This case, however, interpreted § 2514, which authorized transactional immunity for witnesses in cases involving specified serious crimes. Subsequently, the court suggested that Vericker does not apply to proceedings under the 1970 Act. See

United States v. Handler, 476 F.2d 709, 714 (2d Cir. 1973) (dictum).

14. E. g., Bursey v. United States, 466 F.2d 1059, 1073 (9th Cir. 1972).

15. In a leading case dealing with transactional immunity under 18 U.S.C. § 3486, the court said, "But there is a more serious limitation on the application of the statute. . . . Testimony can be compelled and immunity can be given only in a proceeding [involving national security]." In re Bart, 113 U.S.App. D.C. 54, 304 F.2d 631, 635 (1962). The 1970 Act, as we have noted, contained no similar limitation.

inherent in all transactional immunity statutes, has been eliminated from the 1970 Act, and Kilgo's reliance on cases interpreting transactional immunity statutes is misplaced.

■ We conclude, therefore, that when a witness has been granted the use immunity afforded by § 6002, the scope of the grand jury's investigation is immaterial insofar as the witness's fifth amendment privilege is concerned. Accordingly, the district court properly ruled that the government need not amplify its allegation concerning the scope of the gambling investigation.

## D

The statutory procedure for compelling testimony under the 1970 Act does not strip a witness of an opportunity to present his reasons for refusing to testify. Title III of the Organized Crime Control Act of 1970 [28 U.S.C. § 1826] authorizes commitment for contempt only if the witness "refuses without just cause shown to comply with an order of the court to testify . . ."[16] See e. g., Gelbard v. United States, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

■ At the contempt hearing, the grand jury reporter read the transcript of the proceedings in which Kilgo refused to answer specific questions, and the court directed him to answer the questions. Again he appeared before the grand jury and refused to testify. The court then adjudged him in contempt. Apart from his claim of fifth amendment privilege, the only reasons Kilgo offered for his silence were an unwillingness to implicate other persons and fear for his own safety. Quite properly, the district court ruled that these reasons did not provide just cause for refusal to testify. Hale v. Henkel, 201 U.

S. 43, 69, 26 S.Ct. 370, 50 L.Ed. 652 (1906); Piemonte v. United States, 367 U.S. 556, 559 n.2, 81 S.Ct. 1720, 6 L.Ed. 2d 1028 (1961).

## II

■ When the government moved that Kilgo be adjudged in civil contempt, the district court, acting on his representation that he could not afford an attorney, arranged for the appointment of counsel and scheduled the contempt hearing for a later date. Kilgo contends that appointment of counsel at this stage of the proceedings was insufficient; that he had a right to counsel at the hearing on the government's application for an order granting immunity and compelling him to testify.

■ There can be no doubt that Kilgo was entitled to counsel at the civil contempt hearing. United States v. Sun Kung Kang, 468 F.2d 1368 (9th Cir. 1972); cf. Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972).[17] However, because of the difference between immunity and contempt hearings, a claim similar to Kilgo's was rejected in United States v. Handler, 476 F.2d 709 (2d Cir. 1973).

■ Here, as in *Handler*, Kilgo has demonstrated no prejudice by the absence of counsel at the immunity hearing. Indeed, the court's duties in entering the immunity order were largely ministerial. *Cf.* Ullmann v. United States, 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956). Moreover, at the contempt hearing, when Kilgo was represented, he was afforded an opportunity to raise every objection that he could have raised at the immunity hearing. We find, therefore, no deprivation of due process or of the sixth amendment right to counsel. We do not suggest,

---

16. See n. 1, *supra*.

17. At its September 1973 meeting, the Judicial Conference of the United States approved a guideline for use in implementing the Criminal Justice Act, as follows:

"When a judge appoints counsel for a witness before a grand jury under the terms of the Criminal Justice Act in cases in which the witness faces loss of liberty, such appointment shall be deemed to be an appointment under the general terms of the Act rather than under the terms of subsection (g) and that ordinarily such appointment should be considered to be an appointment in a misdemeanor case."

**1222**

however, that in every instance a witness is not entitled to representation at a hearing on the government's application for immunity. Exceptional circumstances, not found in this case, may dictate the need for counsel.

### III

 Finally, Kilgo charges that § 6003 is unconstitutional because witnesses and defendants are not authorized to grant immunity and to compel testimony from other witnesses on the same basis as the government. Kilgo alleges no unconstitutional application of the statute; his attack is purely facial.

In Kastigar v. United States, 406 U.S. 441, 443, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972), Mr. Justice Powell reviewed antecedents of § 6003 that span more than two centuries of Anglo-American law. Traditionally, grants of immunity—an aspect of prosecutorial discretion—have been the sole prerogative of government. Even so, the 1970 Act is framed so that immunity will be conferred sparingly. The public suffers when a criminal is not prosecuted, and this detriment must be weighed carefully against the public benefit that will accrue from the information which immunity can compel. The balancing of these interests has not been left to persons unanswerable to the public. In addition to requiring a certification of the public interest, § 6003 imposes ultimate responsibility on the Attorney General. Immunity requires his approval, or the approval of his deputy or an assistant attorney general—officials appointed by the President with the advice and consent of the Senate. Sound public policy is served by this designation of authority and responsibility. *See* II Working Papers 1433 (1970). A person suspected of crime should not be empowered to give his confederates an immunity bath.

The Constitution reflects the historical precedents and the practical reasons for confining the power to grant immunity to the prosecutorial officers of the government. The sixth amendment assures an accused "compulsory process for obtaining witnesses in his favor." But the authors of the Bill of Rights did not deem it essential to enhance this right by empowering the accused to confer immunity, and nowhere in the Constitution do we find any justification for conditioning the government's ability to grant immunity on a corresponding grant to private individuals.

We hold, therefore, that Kilgo's attack on the constitutionality of § 6003 is without merit.

Affirmed.