**In re Alfred L. HODGES, Jr., Appellant.**

**No. 75–1142.**

United States Court of Appeals, First Circuit.

Argued Sept. 4, 1975.

Decided Nov. 3, 1975.

Anthony E. Grilli, Providence, R. I., with whom Paul J. DiMaio, Providence, R. I., was on brief, for appellant.

Patrick J. Sheedy, Atty., Tax Div., Dept. of Justice, with whom Scott P. Crampton, Asst. Atty. Gen., Washington, D. C., Lincoln C. Almond, U. S. Atty., Providence, R. I., Gilbert E. Andrews, Crombie J. D. Garrett, and Robert E. Lindsay, Attys., Tax Div., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, McEN-TEE, Circuit Judge, and THOMSEN,* Senior District Judge.

COFFIN, Chief Judge.

This is an appeal from a judgment of contempt imposed on a grand jury witness who refused to testify despite a grant of use immunity under 18 U.S.C. § 6002 and § 6003. Appellant disputes the adequacy of the government's denial of electronic surveillance in response to his eleventh hour claim, and insists he should be advised of the scope of the grand jury inquiry before he is required to respond to questions. We find neither of these contentions persuasive, and affirm the citation for contempt.

On April 2, 1975, appellant appeared before a United States grand jury in Providence, Rhode Island. Upon his refusal to testify on the ground that the answers might tend to incriminate him, the government successfully applied for a grant of use immunity for appellant. On returning to the grand jury, appellant continued to refuse to answer on the ground that he was not aware of the scope of the grand jury inquiry. On the following day, the government filed a motion to hold appellant in contempt. Hearing was held on the motion a week later, on April 10. Within 25 minutes before the hearing, appellant submitted an affidavit alleging that he believed that a telephone he used had been subject to an electronic surveillance.

An attorney for the U. S. Department of Justice produced a hastily prepared affidavit which stated that "nothing contained in the file . . . indicate[s] that any of the information contained therein upon which the questioning of Mr. Hodges is based was obtained from any form of electronic surveillance." The affidavit also added affiant's assertion that "To my knowledge none of the information upon which the questioning . . . has been or will be based has been derived from any electronic surveillance." During the hearing, the government attorney testified that he had talked with the case agent of the Internal Revenue Service responsible for developing the case and that the latter "has indicated to me that at no time was any information related to him which either came from information obtained from an electronic surveillance, or is he aware of the fact that there was ever any electronic surveillance involving . . . Mr. Hodges."

Appellant argues that a purely conclusory "to my knowledge" denial on the part of the government prosecutor is inadequate. The government contends that such a disclaimer of knowledge of electronic surveillance meets the requirements of 18 U.S.C. § 3504(a)(1). Both parties argue their proposition as a general standard of governmental disclosure applicable to all cases.

Neither stance, however, adequately describes the current state of the

---

* Of the District of Maryland, sitting by designation.

law. The dominate weight of authority has rejected a conclusory statement as an appropriate response.[1] Similarly, there is general agreement that an affidavit stating that the files of all relevant agencies have been searched is adequate.[2] But between these two poles there is little agreement. Some cases have required that a statement of search be put in the form of an affidavit by the concerned agencies[3] while other cases have found oral testimony or letters as to search acceptable.[4] Another variant is a flexible approach, keying the necessary scope and specificity of the government's denial to the concreteness of the claim of surveillance.[5]

This court has not yet established a minimum standard for an adequate governmental response to a claim of electronic surveillance. Our opinion in *In re Mintzer,* 511 F.2d 471 (1 Cir. 1974), has been erroneously interpreted as requiring only that the prosecutor affirm his lack of knowledge and non-utilization of any taps in framing his questions.[6] While we agree that a purely conclusory denial is not sufficient, we will not endeavor to set down a standard here as

the necessary facts and circumstances are not presented.

■ In the case before us the claim of surveillance was not made in the ordinary course of proceedings below. Over a week had elapsed since the first attempted questioning before the grand jury, and the contempt hearing was about to being when the claim was first advanced. The government's denial, moreover, was somewhat more than conclusory. The oral testimony of the government attorney gave the affirmative assurance of the case agent that no information had been given him which had come from electronic surveillance.

In such a situation the policies articulated in *Calandra v. United States,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), concerning the functioning of grand juries come into play. Preparation of a more detailed affidavit would have inevitably delayed both the contempt hearing and the work of the grand jury. The law has not yet developed a standardized rule that government prosecutors must ordinarily prepare affidavits in anticipation of electronic surveillance claims. This being so,

---

1. See cases cited in notes 2–5 *infra.* But see *United States v. Grusse,* 515 F.2d 157 (2d Cir. 1975).

2. *United States v. Doe (Marx),* 451 F.2d 466 (1st Cir. 1971); *In re Horn,* 458 F.2d 468 (3d Cir. 1972); *In re Grumbles,* 453 F.2d 119 (3d Cir. 1971); *Beverly v. United States,* 468 F.2d 732 (5th Cir. 1972).

3. *United States v. Buscaglia,* 518 F.2d 77 (2d Cir. 1975); *United States v. Toscanino,* 500 F.2d 267 (2d Cir. 1974); *Korman v. United States,* 486 F.2d 926 (7th Cir. 1973); *United States v. Alter,* 482 F.2d 1016 (9th Cir. 1973).

4. *United States v. Aloi,* 511 F.2d 585 (2d Cir. 1975); *United States v. D'Andrea,* 495 F.2d 1170 (3d Cir. 1974); *In re Tierney,* 465 F.2d 806 (5th Cir. 1972); *In re Womack,* 466 F.2d 555 (7th Cir. 1972); *In re Vigil,* 524 F.2d 209 (10th Cir. 1975).

5. *United States v. Stevens,* 510 F.2d 1101 (5th Cir. 1975); *United States v. See,* 505 F.2d 845 (9th Cir. 1974); *United States v. Vielguth,* 502 F.2d 845 (9th Cir. 1974).

6. In that case, the government had produced several wiretaps, one belatedly, and had

tendered the materials, authorizations, and affidavits required by *In re Lochiatto,* 497 F.2d 803 (1st Cir. 1974). Counsel for the witness then requested a government assurance that all central federal and state files be searched. In this context we said, at 511 F.2d at 472 n. 2:

> "While we think this, at least to federal authorities, is a salutary practice, and may be mandated in other contexts, *see Gelbard v. United States,* 408 U.S. 41, 56 [92 S.Ct. 2357, 33 L.Ed.2d 179] (1972), we also think that *at this proceeding* all that can be required is that those conducting the grand jury proceeding affirm that they have no knowledge of and have not in any way employed *other* taps in formulating lines of inquiry or questions to be posed to the witness." [Emphasis supplied.]

Under these circumstances, such a wide-ranging, second stage inquiry would have interfered unduly with an ongoing grand jury proceeding. Our formulation was not addressed to the nature of the government's obligation to respond to a claim of surveillance when first made.

there must be some flexibility allowed in meeting such a last minute claim. Under these circumstances, we must reject appellant's attack on the sufficiency of the affidavit.

The balance of appellant's argument relates to his alleged right to be advised of the scope of the grand jury inquiry. In this case, the application for a grant of immunity noted that the inquiry was to be in the general field of violations of the Internal Revenue Code. The request for the grant was duly signed by the Assistant Attorney General who made the statement required under 18 U.S.C. § 6003(b) that the testimony of appellant was "necessary to the public interest". We find the argument of the appellant effectively met by *In re Kilgo*, 484 F.2d 1215 (4th Cir. 1973). *Kilgo* points out that, as opposed to pre-1970 grants of transactional immunity for the investigation of certain specified offenses, the use immunity granted under the Organized Crime Control Act of 1970 confers protection equal to the exposure and "coextensive with the scope of the fifth amendment privilege against compulsory self-incrimination." *Id.* at 1220.

Appellant's fear of future adjudication of contempt should he be asked similar questions by a future grand jury is irrelevant. Such questioning, absent improper prosecutorial motive, would not raise the issue of multiple contempt citations for the same or similar questions addressed in *Baker v. Eisenstadt*, 456 F.2d 382 (1st Cir. 1972). Not having legitimate ground for refusal to answer, his refusal in a subsequent proceeding would constitute a separate offense.

Finally, as the contempt hearing developed, it became apparent that appellant's refusal to answer was, in the last analysis, independent of any question of the scope of the grand jury. He testified that even though he realized that confinement would be imposed on him, he would not answer questions. When asked whether his intransigence was based on fear, he repeated, "I have to live with that, your Honor. I am sorry. I have to live with my answer why I say No."

*Affirmed.*