**UNITED STATES of America,**
**v.**
**John DOE.**
**In the Matter of Idella MARX, Appellant.**
**No. 71–1336.**

United States Court of Appeals,
First Circuit.

Heard Nov. 10, 1971.
Decided Nov. 24, 1971.

Victor Rabinowitz, New York City, for appellant.

Warren P. Reese, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty. and David R. Nissen, Asst. U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Idella Marx appeals from a district court order holding her in contempt for refusing to answer questions propounded to her by a grand jury. Her sole defense [1] is a claim that the questions are the product of information obtained by the government as the result of an illegal electronic surveillance, hereafter, all-inclusively, tap. She makes no Fifth Amendment claim, having been granted immunity prior to the questioning. The grand jury is, allegedly, investigating matters relating to the wrongful appropriation and distribution of certain classified Defense Department documents, widely known as the Pentagon Papers. One Daniel Ellsberg is said to have had a primary connection therewith. Marx is his mother-in-law. Her defense to the contempt order involves primarily a consideration of the provisions of Title III of the Omnibus Crime Control & Safe Streets Act of 1968, 18 U.S.C. § 2510 et seq., which she asserts entitled her to an evidentiary hearing to probe the possible taps leading to her questioning.

Invocations of this act by grand jury witnesses have already led to diverse decisions, and even more diverse opinions, in a number of circuits. *See, e. g.,* Carter v. United States, 9 Cir., 1969, 417 F.2d 384, 388, cert. denied 399 U.S. 935, 90 S.Ct. 2253, 26 L.Ed.2d 807 (for government); In re Egan, 3 Cir., 1971 (5–2, en banc) 450 F.2d 199 (for witness); In re Evans, D.C.Cir., 1971 (2–1) 452 F.2d 1239 (for witness). This case differs in that the government has made a disclaimer. Marx denied its sufficiency both in form and in substance. Because we think the disclaimer sufficient in view of the ground on which we decide the case, we will assume that *Egan* and *Evans* were rightly decided against the government. We do not by this accept the reasoning of all of the individual opinions, except to say that none is contrary to the result that we reach.

■ Our first question is the precise extent of the government's disclaimer, it having been expressed progressively, as the case proceeded, in various forms. In each instance it was made by Mr. Reese, an Assistant U. S. Attorney from Los Angeles, a principal prosecutor of Ellsberg there, and a lead attorney in presenting the government's witnesses to the grand jury here. We take its final form made in the government brief, and detailed orally before us to elucidate earlier claimed ambiguities, to be that he had a basis for the questioning; that he knew of no tap that entered into that basis, and that, so far as he could ascertain, there had been no tap of Marx or anyone else that led to the questioning. He added that he had been specifically informed by the Department of Justice that no tap of any kind had ever been made on Marx herself.

Because we wanted to be certain, if it was possible to be, that no reservations remained with respect to this last circumstance, after argument we asked the government to supply in affidavit form, if it could do so, a definite assertion that there had been no tap invading Marx's personal rights. It has since so done.[2]

---

1. In her brief appellant argues that she was entitled to the presence of counsel in the grand jury room. Since no persuasive reason and no authority is given for such a proposition, we have not considered it here.

2. The affidavit of a Deputy Assistant Attorney General, Internal Security Division, Department of Justice, states that the affiant "caused an inquiry to be made with the appropriate Federal Government agencies to determine if there has been any electronic surveillance of the conversations of Idella Marx or any electronic surveillance of conversations occurring on her premises, whether or not

Under these circumstances the posture of the case is that the government has fully disclaimed with respect to personal taps, but could be said not to have sufficiently done so if it is necessary to deny in absolute terms, *cf.* Alderman (Kolod) v. United States, 1968, 390 U.S. 136, 88 S.Ct. 752, 19 L.Ed.2d 962; s. c., 1969, 394 U.S. 165, 89 S.Ct. 961, 22 L. Ed.2d 176, third party taps that may, conceivably, have led to her questioning.

The relevant statutory provisions, U. S.C. Title 18, sections 2515, 2518(10) (a), 2510(11), and 3504(a) (1), are set forth in the margin.[3] The government contends that guides to the meaning of these provisions are to be found in the legislative history. Its first point is that the omission of the words "grand jury" in section 2518(10) (a) can be shown to be deliberate. This argument is set forth, and rebutted, in Judge Adams' opinion in *Egan.* We assume, for present purposes, the correctness of the rebuttal, although not without some doubts, particularly if a claim may be made as easily as Marx contends, and a response in the form described in the third paragraph of this opinion, ante, is to be regarded as insufficient. Assuming, however, that the section 2518 (10) (a) procedure is applicable in all

grand jury proceedings, Marx still faces the question whether, in view of the sufficient denial that any taps were made affecting her own personal rights, she was an "aggrieved person" to press a claim that her questioning was the result of leads obtained by illegal taps on someone else. We hold the answer to that question is no.

■ Unless changed by the recent statute, the law on this subject is clear. An illegal seizure cannot be complained of unless some right of the complaining party has been invaded. Jones v. United States, 1960, 362 U.S. 257, 260–261, 80 S.Ct. 725, 4 L.Ed.2d 697. Silverthorne Lumber Co. v. United States, 1920, 251 U.S. 385, 392, 40 S.Ct. 182, 64 L.Ed. 319, principally relied on in *Evans,* and in a number of the opinions of the majority judges in *Egan,* involved an unlawful seizure of the defendant's own books. If a witness who is not yet a defendant is to be given a right not to testify based upon an invasion of the rights of some third party, it should require a strong showing of a legislative purpose to make so substantial a change. In the act's giving standing to complain to an "aggrieved person," and in defining such as "a party to any intercepted * * * communication or a person against whom the

---

she was present or participated in those conversations; that based upon the results of such inquiry he hereby states that there has been no electronic surveillance of any conversations of Idella Marx and that there has been no electronic surveillance of any conversations occurring on her premises."

3. "2515. Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any * * * grand jury * * * if the disclosure of that information would be in violation of this chapter."

"2518(10) (a). Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move

to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

(i) the communication was unlawfully intercepted; * * *"

"2510. Definitions.

As used in this chapter—

(11) 'aggrieved person' means a person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed."

"3504(a) In any trial, hearing, or other proceeding in or before any * * * grand jury * * *

(1) upon a claim by a party aggrieved that evidence is inadmissible because it is the primary product of an unlawful act or because it was obtained by the exploitation of an unlawful act, the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful act. * * *"

interception was directed," section 2510 (11), ante, there is nothing to suggest such a change. In a footnote to an opinion handed down shortly after the act was passed, Mr. Justice White, speaking for the Court, considered the legislative history and expressly rejected the idea that the act expanded traditional concepts of standing developed under F.R. Crim.P. 41(e). Alderman v. United States, 1969, 394 U.S. 165, 175 n. 9, 89 S.Ct. 961, 22 L.Ed.2d 176.

Since Marx, in effect, asks us to disregard the Court's footnote as ill-considered dictum, we will briefly review her position. We find the legislative history in accord with the Court's statement.[4] There is nothing to the contrary in *Egan* or *Evans*, in spite of Marx's constant invocation of the opinions in those cases. In In re Egan the court addressed itself exclusively to invasions of the witness' own rights, made no reference to third party taps, and employed reasoning applicable to personal rights. While the majority opinions in In re Evans contain no such express articulation, Judge Bazelon, in whose opinion Judge Wright concurred except with respect to a matter not here relevant, speaks of *Egan* as "directly in point," 452 F.2d p. 1242, and relies principally upon Silverthorne Lumber Co., also a personal invasion case. We take his statement that the affiants "[stated] their belief that wiretapping and electronic surveillance had been directed against them," p. 1242, as referring to the direct invasion considered in

*Egan,* and not to third party taps against which Marx would protest here.

Marx's only answer to counter her own apparent recognition that she is not an "aggrieved person" within section 2518 (10), is an assertion that "it hardly seems possible that it is the only remedy." She adds that she is "aware of statements in the legislative history * * [which have been argued to be] inconsistent with [her] position," but says she believes the majority opinions in *Egan* and *Evans* answer it. No note is taken of the fact that the *Egan* and *Evans* "answers" have no relation to this question. No vestige of support is offered for Marx's supposition that when the act defined standing it contemplated that relief would be available as well to those who lacked it.

■ Since it is arguable that no sufficient disclaimer of personal taps on Marx was made until the case reached this court, we assume and resolve that issue in her favor, and vacate the order of contempt. The substantive questions, however, having been fully argued, the district court is instructed that it may hold the witness in contempt if she fails to appear and refuses to further answer on the ground of electronic surveillance on the present record. Since such refusal would, in our opinion, be frivolous, the court is instructed in such event not to admit the witness to bail until further order of this court.

Mandate to issue forthwith.

---

4. "Paragraph (11) defines 'aggrieved person' to mean any person who was a party to any intercepted wire or oral communication or a person against whom the interception was directed. This definition defines the class of those who are entitled to invoke the suppression sanction of section 2515. * * * It is intended to reflect existing law (Jones v. United States, 80 S.Ct. 725, 362 U.S. 257 [4 L.Ed.2d 697] (1960) * * *)." 1968 U.S.Code Cong. & Admin.News, pp. 2112, 2179–2180 (Senate Report No. 1097).