**In re Stephen TSE, Appellant.**

**No. 84–1847.**

United States Court of Appeals,
First Circuit.

Nov. 27, 1984.

Edward J. Lee, Boston, Mass., with whom Hale, Sanderson, Byrnes & Morton, Boston, Mass., was on brief for appellant.

Stephen M. Ryan, Boston, Mass., with whom James D. Harmon, Jr., William F. Weld, U.S. Atty., and Paul F. Healy, Jr., Asst. U.S. Atty., Boston, Mass., were on brief for United States.

Before CAMPBELL, Chief Judge, COF-FIN and BREYER, Circuit Judges.

PER CURIAM.

On October 1, 1984, pursuant to subpoena, appellant appeared before the President's Commission on Organized Crime (Commission), but asserted his fifth amendment privilege in response to a number of questions. On October 19, 1984, he was granted immunity pursuant to 18 U.S.C. § 6004, but he still refused to answer, whereupon an ex parte order was obtained that day from a district court ordering appellant to testify. Appellant persisted in his refusal, this time contending that the order was facially invalid and that the questions were a product of illegal wiretaps. A few hours later a contempt hearing was scheduled, and appellant was held in contempt and ordered incarcerated. On appeal from the contempt order, appellant argues (1) that procedural irregularities invalidated the order to testify and contempt proceeding and (2) that the government's denial of illegal electronic surveillance was inadequate.

1.  Alleged procedural irregularities.

Appellant raises a number of objections. We start by reviewing briefly the statutory procedure. Section 6002 of Title 18 provides as follows:

§ 6002.  Immunity generally

Whenever a witness refuses, on the basis of his privilege against self-incrimination, to testify or provide other information in a proceeding before or ancillary to—

(1) a court or grand jury of the United States,

(2) an agency of the United States, or

(3) either House of Congress, a joint committee·of the two Houses, or a committee or a subcommittee of either House,

and the person presiding over the proceeding communicates to the witness an order issued under this part, the witness may not refuse to comply with the order on the basis of his privilege against self-incrimination; but no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order.

The three succeeding sections—6003, 6004, and 6005—specify the procedure to be followed in obtaining an order immunizing the witness and directing him to testify, section 6003 applying to refusal to testify before a court or grand jury, § 6004 to refusals before an agency, and § 6005 to refusals before a House. Earlier, some of appellant's argument seemed to have been directed to the claim that the Commission's grant of immunity was invalid because the § 6003 procedure was not followed. However, since the Commission is an agency for purposes of 18 U.S.C. § 6002, *see* Public Law No. 98–368, § 4, 98 Stat. 490, 491 (1984), § 6004 was the statute directly applicable.

Section 6004 reads as follows:

"§ 6004. Certain administrative proceedings

(a) In the case of any individual who has been or who may be called to testify or provide other information at any proceeding before an agency of the United States, the agency may, with the approval of the Attorney General, issue, in accordance with subsection (b) of this section, an order requiring the individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in section 6002 of this part.

(b) An agency of the United States may issue an order under subsection (a) of this section only if in its judgment—

(1) the testimony or other information from such individual may be necessary to the public interest; and;

(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self-incrimination."

In substance, § 6004 requires an agency to obtain the approval of the Attorney General before granting use immunity to a witness. Under 28 C.F.R. § 0.175, the Attorney General's authority has been delegated to the Assistant Attorney General in charge of the Criminal Division (appellant has not challenged the regulation) and, in the present case, the latter's authority was obtained before the Commission ordered appellant to testify.

Unlike section 6003 and 6005 of Title 18 under which a *court* issues the order directing the witness to testify and granting him use immunity in the event he does testify—an important consequence being that disobedience of the court's order lays the foundation for a contempt proceeding—the § 6004 immunity procedure does not directly involve a court. Section 2(b)(1) of the Public Law 98–368, however, does provide a procedure whereby the Commission can obtain court enforcement of its subpoena, and disobedience of the enforcement order becomes punishable as a contempt of court.

When, after being immunized by the Commission and directed to testify under 18 U.S.C. § 6004, appellant persisted in his refusal, the Commission sought an order from the district court compelling appellant to testify. Whether the Commission was purporting to follow § 2(b)(1) of Public Law 98–368 or was, somewhat by analogy, seeking court enforcement under 18 U.S.C. § 6003 is not entirely clear, and from this ambiguity probably stems much of the procedural squabbling in this case.

With this background, we turn to appellant's specific objections. First appellant complains that the district court's order enforcing the Commission's immunity order and directing appellant to testify was issued ex parte. Appellant points out that § 2(b) of Public Law 98–368,[1] the section dealing with enforcement of a Commission *subpoena*, provides that the Commission is an agency for purposes of Fed.R.Civ.P. 81(a)(3). Rule 81(a)(3), in turn, states that the rules of civil procedure apply to "proceedings to compel the giving of testimony or production of documents in accordance with a subpoena issued by an ... agency ... except as otherwise provided ... by order of the court in the proceeding." From this reference, appellant contends he was entitled to be served with an enforce-

---

**1.** Section 2(b) of Public Law 98–368 reads

"(b)(1) In case of contumacy or refusal to obey a subpoena issued to a person under this section, a court of the United States within the jurisdiction of which the person is directed to appear or produce information, or within the jurisdiction of which the person is found, resides, or transacts business, may upon application by the Attorney General, issue to such person an order requiring such person to appear before the Commission, or before a member of the Commission, or a member of the staff of the Commission designated by the Commission for such purpose, there to give testimony or produce information relating to the matter under investigation, as required by the subpoena. Any failure to obey such order of the court may be punished by the court as a contempt thereof.

(2) The Commission is an agency of the United States for the purpose of rule 81(a)(3) of the Federal Rules of Civil Procedure."

ment petition, granted time to file an answer, and accorded a hearing.

■ We need not decide whether appellant's contention is correct in this regard. Any error in failing to offer a hearing at that point was harmless. Appellant was subpoenaed on September 20, 1984. So far as appears from the record, appellant did not object to the subpoena, but rather duly appeared before the Commission on October 1, 1984. At that time he answered some questions, but asserted his fifth amendment privilege in response to others, and, except for matters of form and one question to which he raised a marital privilege (a matter no longer pursued), he made no other objection. Appellant admits that on October 11, 1984 he was informed that the Commission would seek an immunity order, and his appearance was then rescheduled for October 19, 1984. On October 19, 1984 when appellant again asserted his fifth amendment privilege, he was shown the Commission's § 6004 order, but he still refused to testify, whereupon the ex parte order from the district court was obtained. Even assuming a hearing might have been required had appellant raised other objections to the Commission's subpoena or questioning, the *only* objection raised by the time the enforcement order was sought was based on the fifth amendment. Once the Commission had issued a § 6004 order, that objection was removed.

The question then is, what, given appellant's limited objection, could a pre-enforcement hearing have accomplished? Appellant apparently would have sought to challenge the procedure the Commission followed in deciding to immunize appellant. However, in the context of a grant of immunity under 18 U.S.C. § 6003, courts have held that the witness has no constitutional or statutory right to a pre-immunity hearing. *United States v. Pacella*, 622 F.2d 640, 643–644 (2nd Cir.1980); *Ryan v. Commissioner of Internal Revenue*, 568 F.2d

531, 539, 540 (7th Cir.1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978). This is because of the essentially ministerial function the court exercises in issuing § 6003 order to testify; it does not review the executive branch's decision that immunity is in the public interest, but rather only ascertains whether the statutory procedures were followed. *Ryan*, 568 F.2d at 540.

The harmlessness of the absence of a hearing preceding the court's order to compel testimony is further demonstrated by the fact that appellant had an opportunity at the contempt hearing to raise any issue he may have wished to raise earlier. And the one challenge appellant earlier made (but seems to have now abandoned) to the procedure the Commission followed in deciding to grant appellant immunity is without merit.[2]

■ Next, appellant argues the court's order enforcing the Commission's order to testify was invalid because the application to the court was not made by the Attorney General. Rather, the Commission's motion was filed by an assistant United States Attorney on behalf of the United States Attorney. Appellant relies on the portion of Public Law 98–368, § 2(b)(1) which reads "[i]n case of ... refusal to obey a subpoena issued to a person under this section, a court of the United States ... *may upon application by the Attorney General*, issue to such person an order requiring such person to appear before the Commission ... there to give testimony ... as required by subpoena."

It must be remembered that not until after the district court enforced the Commission's order to testify did appellant raise any issue other than the privilege against self incrimination. The Attorney General, through the Assistant Attorney General in charge of the Criminal Division,

---

**2.** Appellant seemed to contend in his motion for bail pending appeal that § 6003 was applicable to the Commission's decision to immunize appellant and hence it was necessary for a United States Attorney to apply for an immunity order.

As noted earlier, § 6004—not § 6003—governed the Commission's grant of immunity and involvement of the United States Attorney was not necessary.

had approved the Commission's order to compel testimony and concomitant grant of use immunity to appellant. It strains credibility to believe that the Attorney General, having approved the grant of immunity, would not approve the Commission's effort to enforce its order, and we think it carries bureaucracy too far to require a further and separate approval or application from the Attorney General. Nor do we think the Attorney General had to approve the application for contempt.

Next, citing *United States v. Alter*, 482 F.2d 1016 (9th Cir.1973), appellant contends the few hours notice he was given of the contempt hearing was an insufficient time in which to prepare a defense.

In *Alter*, a case involving a witness held in contempt for refusing to testify before a grand jury, the court stated that "[w]hen the alleged contemnor's defense raises legal issues of some complexity or there is an indication that an evidentiary hearing may be required to resolve factual issues, the five-day notice period prescribed by Rule 45(d) of the Federal Rules of Criminal Procedure (Rule 6(d) of the Federal Rules of Civil Procedure) should be adopted as the standard, absent a showing by the Government of some compelling need to shorten time and absent a showing by the contemnor of some reason why a longer time is needed to prepare the defense." Compelling need for reducing the time would not inhere simply in the fact a grand jury investigation was pending, the court indicated. *Alter*, 482 F.2d at 1023.

The *Alter* court, however, citing *United States v. Weinberg*, 439 F.2d 743 (9th Cir. 1971), noted that in some cases the relevant issues will have been raised prior to the immunity hearing in which case the alleged contemnor may have had adequate time to prepare his defense even though little time elapses between the alleged contempt and the contempt hearing. In *Weinberg*, although contempt hearings followed almost immediately after immunized witnesses refused to testify before the grand jury, the court concluded the witnesses had not been denied due process by the short notice.

This was because it was apparent ahead of time that the government would seek contempt, the issues were foreseen, and counsel were able to represent appellants vigorously at the contempt hearing.

■ We find *Weinberg* persuasive and applicable. Here, appellant had been originally questioned on October 1, 1984. On October 11, 1984, he was informed the Commission would seek to immunize appellant and hence appellant should have anticipated a contempt proceeding would follow if he persisted in his refusal to answer. The contempt hearing did not take place until eight days later, on October 19, 1984. Thus, we think appellant had sufficient time to formulate any objections he might have had to the Commission's questions and procedure, and appellant was not denied due process by the expedited manner in which the district court handled the contempt proceeding.

2. Electronic Surveillance

■ A witness who has been granted immunity may refuse to answer questions if the source of the inquiry is illegal electronic surveillance. *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972). Invoking this rule, appellant filed an affidavit at the contempt hearing stating his suspicions that he had been subjected to electronic surveillance. Affidavits in response were filed by Stephen Ryan, the Commission's lawyer assigned to the investigation, and John Bean, a Boston Police Department detective. As the attorney conducting the investigation of appellant, Ryan stated he had consulted with the Commission's executive director and chief counsel as well as with an FBI agent assigned to the Commission, both of whom directly supervised the Commission's small staff and were aware of the status of all the Commission's ongoing investigations. They confirmed Ryan's "personal knowledge ... that no member of the Commission's staff had received illegal electronic surveillance information from federal or local law enforcement officials." Discussions with staff members concerned with

the investigation of Chinese organized crime produced similar results. Ryan stated the Commission had not made any request for or received closed interception material concerning appellant and was unaware of any Title III electronic surveillance information concerning appellant, and he asserted he had an independent factual basis, not based on illegal surveillance, for the questions he put to appellant. An ex parte in camera affidavit contained further details.

The Bean affidavit, in response to appellant's assertion that Detective Bean had investigated native and other Chinese, stated Bean had never been in possession of illegal electronic surveillance information concerning appellant or any other individual and hence had not conveyed any such information to the Commission.

In *In re Quinn*, 525 F.2d 222 (1st Cir. 1975), this court stated that the government's denials of illegal electronic surveillance should "be amplified to the point of showing that those responding were in a position, by firsthand knowledge or through inquiry, reasonably to ascertain whether or not relevant illegal activities took place." *Id.* 225. One difficulty in *Quinn* was that while the affiants were sufficiently informed of their own staffs' investigative efforts, there was no indication whether affiants knew "the means used by other federal agencies to gather information, if any, that was furnished to [affiants'] respective staffs." Consequently, in the context of an investigation with international overtones, this court concluded "there must be included an explicit assurance indicating that all agencies providing information relevant to the inquiry were canvassed." *Id.*, 225, 226.

Appellant argues the *Quinn* standard was not met. He contends the affidavits were insufficient because (1) they did not affirm or deny the existence of electronic surveillance (but rather conclusorily asserted that no *illegal* surveillance occurred), and (2) did not indicate whether other agencies supplying information to the Commis-

sion had been questioned about electronic surveillance.

With respect to appellant's first point, we are satisfied, on the basis of the ex parte affidavit read in conjunction with the other affidavits, particularly the Commission's "unaware[ness] of any Title III electronic surveillance concerning [appellant]," that the potential deficiency to which appellant points is not material in the circumstances of this case.

With respect to appellant's second point, it is true that the government's affidavits did not expressly state whether inquiry had been made of other agencies supplying information to the Commission. But the Ryan affidavits did state that Ryan (as well as others with whom he had checked) was "in a position to definitively know what information ha[d] been supplied to the Commission and its sources," that the Commission had not requested or received closed interception material concerning appellant, and that appellant had not been mentioned in any Title III information provided to the Commission. While perhaps not following the most preferable course, we think the denial was adequate.

In *In re Pantojas*, 628 F.2d 701 (1st Cir.1980), where the attorney conducting the investigation stated by affidavit that after a search of FBI files and discussion with relevant officials he knew of no electronic interception by the FBI and had not been furnished the results of any such surveillance by other law enforcement officials, this court concluded the affidavit satisfied the government's duty to affirm or deny the occurrence of electronic surveillance. In so concluding, we rejected the argument that the affiant's inability to deny whether other law enforcement officials had subjected appellant to electronic surveillance rendered the affidavit inadequate. We reasoned that since 18 U.S.C. § 3504 was aimed against the *use* of unlawful surveillance, the inability of the affiant to deny the *existence* of illegal surveillance was irrelevant when the affiant could knowingly deny that the results of any

such surveillance were passed on. 628 F.2d at 703–704.

An important factor present in the instant case as well as in *Pantojas*, but absent in *Quinn*, was that the attorney conducting the investigation of the witness was an affiant. *See Quinn*, 525 at 226 (investigation conducted by attorney specially assigned by Justice Department, but affidavit filed by local United States Attorney). This is significant because the attorney investigating and formulating the questions to the witness will likely have sifted through the evidence and thus will be in a position to recognize whether the evidence on which the questions are based is the product of, say, direct interviews with informants or something else. It is true that the witness in *Pantojas* was not being questioned, but rather had been directed to appear in a lineup. But the ultimate issue—whether the request being made of the witness was the product of illegal surveillance—was the same and hence *Pantojas* is not necessarily limited by the grand jury's narrow request of the witness. In substance, here as in *Pantojas*, the attorney in charge of the investigation of appellant has indicated that he was in a position to know the information the Commission received and its sources, and he has said that none of the Title III information the Commission received concerned appellant.[3] The denial, while not ideal, was adequate.

■ We feel it is important to note that appellant raised his claim of electronic surveillance only a few hours before his contempt hearing was scheduled.[4] Although we do not now hold that a witness should be required to make a claim anticipatorily, or should be penalized for failing to do so,

we do believe that the timeliness of the raising of the claim has some bearing on how rigorously we scrutinize the government's response. We first recognized the principle in *In re Hodges*, 524 F.2d 568 (1st Cir.1975), that the government must be accorded some flexibility in meeting last minute claims and we reiterate that principle here. Although the delay in raising the electronic surveillance issue in this proceeding was arguably less egregious than in *Hodges*, we find that the last minute introduction of this claim excuses to some extent the sketchiness of the government's initial affidavits.

This factor also lends support to our consideration of the post-hearing affidavits to remedy any omissions in the government's hastily drafted documents. *See United States v. Doe*, 451 F.2d 466, 467 (1st Cir.1971). In *Doe*, the government did not adequately disclaim the use of electronic surveillance until the case was on appeal. In that instance we vacated the contempt order and instructed the district court it could again hold the witness in contempt should she again refuse to answer on the grounds of electronic surveillance. We decline to follow that procedure here because to do so ignores the eleventh hour raising of the wiretap issue and the reasonableness and arguable adequacy of the government's attempts to meet its burden. Here the government's post-hearing affidavits, both as to efforts to elicit information from other agencies and as to the absence of receipt of any information based on electronic surveillance, were submitted just a few days after the contempt hearing and put to rest any lingering doubts we had about the adequacy of their response.[5]

3. Appellant does not contend that he may refuse to answer questions resulting from leads obtained by illegal taps on phones not located on premises owned, leased, or licensed by appellant and not involving appellant's conversation. *See United States v. Doe*, 451 F.2d 466 (1st Cir. 1971); *In re Womack*, 466 F.2d 555, 558 (7th Cir.1972).

4. Appellant was questioned by the Commission's attorney for a full day on October 1, 1984. He knew by October 11, 1984 that the Commission

intended to immunize him. He also knew he had been subpoenaed to appear before the Commission's specially scheduled public hearing slated for October 23 and 24, 1984. And he should have realized as of October 11 that the Commission was likely to take any step necessary to secure his testimony.

5. Appellant also points out that in his affidavit challenging the questioning as derived from illegal electronic surveillance he alleged his belief that three separate phone numbers he had used

We, therefore, feel assured that the district court's finding of contempt was warranted.

The order holding appellant in contempt is affirmed.

(two home, one work) were the subject of taps, but the government's response did not specifically state whether it had inquired with respect to interception of appellant's conversation on each of the enumerated numbers or the interception of other persons' conversation occurring on premises owned, leased, or licensed by appellant. While closer attention to such details might save protracted litigation, appellant did not raise this particular objection in the district court and we think the denial of awareness of Title III surveillance material "concerning" appellant roughly responds to appellant's affidavit and was adequate given the pressures of time on the government's response.