**In re GRAND JURY PROCEEDINGS.**

**M.B.D. No. 87–569.**

United States District Court,
D. Massachusetts.

Sept. 2, 1987.

## MEMORANDUM

YOUNG, District Judge.

This matter arises out of an application by Frank L. McNamara, Jr., the "Acting United States Attorney," for an order of immunity in a grand jury proceeding sought pursuant to 18 U.S.C. § 6003. This Court, sitting as the session responsible for the Miscellaneous Business Docket, took the application under advisement and invited the government to brief the issue of whether the authorization by the Assistant Attorney General of the Criminal Division of the Department of Justice of an "Acting United States Attorney" to make an application for an order of immunity under 18 U.S.C. § 6003 is procedurally and jurisdictionally infirm under the immunity statute.

### I.

The President of the United States has nominated Frank L. McNamara, Jr. ("Mr. McNamara") to be United States Attorney for the District of Massachusetts and, pursuant to 28 U.S.C. § 541, has submitted his name to the Senate for confirmation.[1] Pending such confirmation, United States Attorney General Edwin Meese III ("Attorney General Meese"), acting pursuant to 28 U.S.C. § 546(a), appointed Mr. McNamara interim United States Attorney for the Dis-

---

1. Section 541 provides in relevant part: "The President shall appoint, by and with the advice and consent of the Senate, a United States attorney for each judicial district."

trict of Massachusetts on April 6, 1987.[2] The Senate having not yet acted on the President's nomination of Mr. McNamara, his appointment as interim United States Attorney expired at midnight on August 4, 1987, one hundred twenty days after it had been made by the Attorney General. 28 U.S.C. § 546(c)(2). There is thus a vacancy at present in the office of the United States Attorney for the District of Massachusetts.

By August 4, 1987, it having become clear that the Senate would not confirm Mr. McNamara that day, the Attorney General designated and appointed Mr. McNamara to be Acting United States Attorney for the District of Massachusetts.[3] The order, No. 1209–87, was effective as of August 4, 1987 and is intended to expire at the earlier of either the Senate confirmation of a Presidential nominee pursuant to 28 U.S.C. § 541 or the appointment of a United States Attorney by the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 546(d).

While serving as interim United States Attorney, Mr. McNamara made the judgment that a certain immunity order was in the public interest and duly applied to the Attorney General for authority to make such an application to the District Court. Permission was granted by the Attorney General's designee. It was not until August 5, 1987, however, that Mr. McNamara, signing himself as Acting United States Attorney, applied to this Court for an order compelling testimony under a grant of immunity pursuant to § 6003. The Court invited the office of the United States Attorney to brief the issue as framed above.[4]

## II.

The statutory immunity scheme, 18 U.S.C. §§ 6001–05,[5] was enacted in 1970 as a product of a comprehensive study on organized crime and on the reform of the federal criminal laws conducted by the National Commission on Reform of Federal Criminal Laws ("Commission"), as well as by Congress. The immunity provisions were intended, among other things, to substitute "use" immunity for "transactional" immunity, *see generally Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) (use immunity provided

**2.** Section 546 provides:

(a) Except as provided in subsection (b), the Attorney General may appoint a United States attorney for the district in which the office of the United States attorney is vacant.

(b) The Attorney General shall not appoint as United States attorney a person to whose appointment by the President to that office the Senate refused to give advice and consent.

(c) A person appointed as United States attorney under this section may serve until the earlier of—

(1) the qualification of a United States attorney for such district appointed by the President under section 541 of this title; or

(2) the expiration of 120 days after appointment by the Attorney General under this section.

(d) If an appointment expires under subsection (c)(2), the district court for such district may appoint a United States attorney to serve until the vacancy is filled. The order of appointment by the court shall be filed with the clerk of the court.

**3.** Earlier that same day Acting United States Attorney General Arnold I. Burns had appointed Mr. McNamara as Assistant United States Attorney for the District of Massachusetts presumably under the authority delegated to him under 28 U.S.C. § 510. Section 510 provides: "The Attorney General may from time to time make such provisions as he considers appropriate authorizing the performance by any other officer, employee, or agency of the Department of Justice of any function of the Attorney General." Mr. McNamara's appointment by Mr. Burns was undoubtedly effectuated pursuant to 28 U.S.C. § 542(a) which provides in relevant part: "The Attorney General may appoint one or more assistant United States attorneys in any district when the public interest so requires."

**4.** The Court's order was impounded. It ought be a matter of grave concern to the Office of the United States Attorney that the efficacy of this impoundment order has been seriously undermined. *See, e.g.,* The Boston Globe, August 13, 1987, at 1, col. 1 (remarks of Justice Department spokesman John K. Russell).

**5.** Section 6003 sets forth the statutory mechanism whereby § 6002 use immunity is granted in a court or grand jury of the United States. Section 6001 is a definitional part, whereas § 6004 applies to use immunity before administrative agencies and § 6005 authorizes immunity for witnesses before either House of Congress. *See generally In re Tse,* 748 F.2d 722, 723–25 (1st Cir.1984) (discussing sections 6003–05).

by § 6002 is coextensive with scope of the fifth amendment privilege against self-incrimination), thereby eliminating the fear of immunity baths, and to clarify the role of the several branches of government by providing specific procedures for the granting of immunity. H.Rep. No. 1549, 91st Cong., 2d Sess., U.S.Cong. & Ad.News, 4007, 4017 (1970); H.Rep. No. 1188, 91st Cong., 2d Sess. 13 (1970); II Working Papers of the Commission on Reform of Federal Criminal Laws 1405, 1421–22 (1970) (hereinafter "Working Papers").[6] The Supreme Court, in reviewing the immunity provisions, noted that "[t]he purpose of § 6002 was to limit the scope of immunity to the level that is constitutionally required, as well as to limit the use of the immunity to those cases in which the Attorney General, or officials designated by him, determine that gaining the witness' testimony outweighs the loss of the opportunity for criminal prosecution of that witness." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 260–61, 103 S.Ct. 608, 615–16, 74 L.Ed.2d 430 (1983) (§ 6002 immunity before grand jury does not extend to subsequent deposition testimony in civil case).

The Commission sought to limit the use of immunity by following three preconditions or "special clearance requirements," which had existed under then current federal law, for a grant of immunity: (1) judgment by a United States Attorney that the testimony is necessary to the "public interest"; (2) approval of the Attorney General of the United States Attorney's request; and (3) application by the United States Attorney to a United States District Court for issuance of the order directing the witness to testify under immunity. Working Papers, *supra*, at 1433. The intent of the Commission and Congress was to centralize

approval within the Department of Justice so that a person familiar with the total range of law enforcement policies could review the request and harmonize the needs as set forth in the particular case by the United States Attorney with law enforcement policies on a more general, national level. *Id.*

The Commission, in deference to the practicalities of the sheer volume of immunity requests that would now befall the Attorney General under the new centralized statute, specifically permitted the Deputy Attorney General or one of the Assistant Attorney Generals to act upon an immunity request. "The draft statute limits delegability by retaining the approval function at a high level and authorizing delegation only to the Deputy Attorney General or an Assistant Attorney General. This language serves to highlight the social cost in immunity grants and *minimize the possibility of abuse through overly broad subdelegations by the Attorney General." Id.* at 1437 (emphasis added). No such delegation power is specifically provided for the United States Attorney at the public interest determination stage of the process. The scheme in total serves to eliminate too expansive an approach to the granting of immunity by a United States Attorney in the field.

The court's role was viewed by the Commission as akin to a "recording agency" where the predicate facts to the issuance of an order would be set down. H.Rep. No. 1549, 91st Cong., 2d Sess., U.S.Cong. & Ad.News, 4007, 4018 (1970) ("The court's role in granting the order is merely to find the facts on which the order is predicated."); Working Papers, *supra* p. 5, at 1436.[7] The Commission made manifest the

---

6. For a review of the history of immunity statutes and the attendant concerns over "immunity baths," *see Kastigar v. United States*, 406 U.S. 441, 445–52, 92 S.Ct. 1653, 1656–60, 32 L.Ed.2d 212 (1972); Working Papers, *supra* p. 5, at 1406–12; Comment, *The Federal Witness Immunity Acts in Theory and Practice: Treading the Constitutional Tightrope*, 72 Yale L.J. 1568 (1963).

7. The Commission also noted there was a remote possibility that a federal district court

could deny an application, under its "inherent power," if unclean hands or "cronyism" were suspected. The Commission frowned upon an expansive interpretation of this power, and the courts do not appear to have made excessive use of it. *See United States v. Morrison*, 535 F.2d 223, 229 (3d Cir.1976) (while noting that courts invariably lack power to grant immunity except upon an application by the government, court held that due process may require government to demand immunity when prosecutorial misconduct was apparent).

circumscribed role intended for the courts by specifying that "the United States district court ... shall issue, in accordance with subsection (b) ... upon the request of the United States attorney ... an order," when two facts are demonstrated: "a 'public interest' certification by the United States Attorney, and approval by the Attorney General." *Id.* at 1436; 18 U.S.C. § 6003(a).

## III.

■ This Court's role in reviewing an application for immunity pursuant to 18 U.S.C. § 6003 is therefore limited in scope.

> The court may scrutinize the record to ascertain that a request for immunity is, under the statute, jurisdictionally and procedurally well-founded and accompanied by the approval of the Attorney General.... Under no circumstances, however, may a federal court prescribe immunity on its own initiative, or determine whether application for an immunity order which is both jurisdictionally and procedurally well-founded is necessary, advisable or reflective of the public interest, for the federal judiciary may not arrogate a prerogative specifically withheld by Congress.

*United States v. Davis,* 623 F.2d 188, 192–93 (1st Cir.1980) (quoting *In re Daley,* 549 F.2d 469, 479 (7th Cir.), *cert. denied,* 434 U.S. 829, 98 S.Ct. 110, 54 L.Ed.2d 89 [1977]); *In re Lochiatto,* 497 F.2d 803, 804 n. 2 (1st Cir.1974) (noting that reasoning of the Supreme Court in *Ullmann v. United States,* 350 U.S. 422, 76 S.Ct. 497, 100 L.Ed. 511 (1956) when analyzing 18 U.S.C. § 3486 applied to § 6003); *see Ullmann v. United States,* 350 U.S. 422, 432–34, 76 S.Ct. 497, 503–04, 100 L.Ed. 511 (1956) ("A fair reading of [the statute] does not indicate that the district judge has any discretion to deny the order on the ground that the public interest does not warrant it.... [T]he Court's duty [under the statute] is only to ascertain whether the statutory requirements are complied with by the grand jury, the United States Attorney, and the

Attorney General...."). This Court is to ascertain compliance by examining the procedures followed and not through any substantive analysis of whether the "public interest" is in fact satisfied. *See In re Russo,* 448 F.2d 369, 372 (9th Cir.1971) (courts have no power to inquire into merits of public interest decision). Courts that have addressed the issue of procedural compliance have followed the tripartite approach set forth by the Commission. Thus, in *In re DiBella,* 499 F.2d 1175, 1177 (2d Cir.), *cert. denied,* 419 U.S. 1032, 95 S.Ct. 513, 42 L.Ed.2d 306 (1974), the Second Circuit Court of Appeals analyzed compliance in terms of the (1) request by the United States Attorney to the Attorney General, or designate; (2) approval by the Attorney General, or designate; and (3) an application to the district court by the United States Attorney.

■ In the instant case, the first two steps appear to have been followed satisfactorily and are therefore jurisdictionally and procedurally well-founded.[8] The problem arises with the actual application to this Court by an *Acting* United States Attorney instead of a duly appointed United States Attorney. Although courts have stated repeatedly that the "power to apply for immunity pursuant to 18 U.S.C. §§ 6002–03 (1977) rests solely with the Government, being *confined* to the United States Attorney and his superior officers," *United States v. Davis,* 623 F.2d at 192 (emphasis added); *United States v. Allstate Mortgage Corp.,* 507 F.2d 492, 495 (7th Cir.1974) ("Under neither statute, [§§ 6002 or 6003], is *anyone other than the United States Attorney,* with the approval of superior officials, authorized to request an order granting immunity to a witness.") (emphasis added), *cert. denied,* 421 U.S. 999, 95 S.Ct. 2396, 44 L.Ed.2d 666 (1975), they have nonetheless permitted designees of the United States Attorney to make applications to the district court for grants of immunity. *See, e.g., In re Special September 1978 Grand Jury,* 590 F.2d 245, 249 (7th Cir.) (upheld designation that

---

8. The Court assumes that the Attorney General's delegation to the Assistant Attorney General in charge of the Criminal Division pursuant to 28 C.F.R. § .175 comports with 18 U.S.C. § 6003(b). *See In re Tse,* 748 F.2d at 724 (assumed though did not decide delegation was proper).

Special Attorney, under 28 U.S.C. § 515, make immunity application) (hereinafter "*September Grand Jury*"), *cert. denied,* 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979); *In re Grand Jury Proceedings,* 554 F.2d 712, 713 (5th Cir.) (upheld United States Attorney's specific designation pursuant to 28 C.F.R. § .131 of Assistant United States Attorney) (hereinafter "*Grand Jury Proceedings*"), *cert. denied,* 434 U.S. 892, 98 S.Ct. 269, 54 L.Ed.2d 178 (1977); *United States v. Smith,* 532 F.2d 158, 160 (10th Cir.1976) (upheld application of Assistant United States Attorney where United States Attorney was hospitalized and First Assistant was acting in his stead). The Court has not found any of these cases to be directly on point, however, in that they involved specific designations by a United States Attorney—absent here,[9] *see, e.g., September Grand Jury,* 590 F.2d at 249; *Grand Jury Proceedings,* 554 F.2d at 713, an emergency situation such as the hospitalization of the United States Attorney, *United States v. Smith,* 532 F.2d at 160, the recusal by the United States Attorney of his office, *September Grand Jury,* 590 F.2d at 248, or some form of actual participation by the United States Attorney, though not in strict compliance with the letter of the required procedures. *See, e.g., In re DiBella,* 499 F.2d at 1178 (United States Attorney signed application belatedly at proceeding before district court); *Ryan v. Commissioner of Internal Revenue,* 568 F.2d 531, 540–41 (7th Cir.1977) (application signed by Assistant United States Attorney in name of United States Attorney upheld where United States Attorney was involved in process), *cert. denied,* 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978).

■ The unique circumstances presented here are complicated by weight which must attach to the proceedings pursuant to 28 U.S.C. § 546—the only statutory authority other than a presidential appointment pursuant to 28 U.S.C. § 541 through which an actual, fully empowered United States Attorney may be created. *See supra* note 2. As detailed earlier, Attorney General Meese appointed Mr. McNamara United States Attorney pursuant to 28 U.S.C. § 546(a).[10] The appointment expired under subsection (c)(2) without any action by the Senate. Under subsection (b), the Attorney General shall not appoint as United States Attorney a person the Senate refused to give advice and consent. This would appear to foreclose the Attorney General from reappointing Mr. McNamara.[11] The Attorney General instead designated and appointed Mr. McNamara Acting United States Attorney pursuant to 28 U.S.C. § 510. For purposes of § 546, therefore,

---

**9.** *See* 28 C.F.R. § .131, which provides:

Each U.S. Attorney is authorized to designate any Assistant U.S. Attorney in his office to perform the functions and duties of the U.S. Attorney during his absence from office, and to sign all necessary documents and papers as Acting U.S. Attorney while performing such functions and duties.

**10.** The original version of 28 U.S.C. § 546 was upheld as not in violation of the constitutional doctrine of the separation of powers. *United States v. Solomon,* 216 F.Supp. 835 (S.D.N.Y. 1963). The 1986 amendments to the Act would appear to further insulate it from constitutional attack.

**11.** The rather terse legislative history to § 546 states:

If there is a vacancy in the office of the United States Attorney, 28 U.S.C. 546 authorizes the district court for the district where the vacancy exists to appoint a person to serve as United States Attorney until a Presidentially-appointed United States Attorney has qualified. Section 69 amends 28 U.S.C. 546 to authorize the Attorney General to appoint an interim United States Attorney when there is a vacancy. The Attorney General's power to appoint is circumscribed, however. The Attorney General cannot appoint a person whose appointment as the United States Attorney by the President was not advised and consented to by the Senate. Moreover, a person appointed by the Attorney General serves only for 120 days, or until a person appointed to the office by the President has qualified, if that is earlier. Once the appointment of an interim United States Attorney expires, the district court appoints a United States Attorney to serve until a presidentially appointed United States Attorney is qualified.

S. 1236, 99th Cong., 2d Sess., 132 Cong.Rec. 11294 (1986).

Although the drafters appeared to envision that the district court would act at the expiration of an interim appointment, it is not clear from this Court's reading of the statute, that the Attorney General himself would be foreclosed from making a second interim appointment under subsection (a), though limited in his choice, of course, by subsection (b).

the office of United States Attorney for the District of Massachusetts is still vacant.

 This Court is not familiar with any case where either a designee of the United States Attorney or a delegatee of the Attorney General has acted where there was a "vacancy" in the office of the United States Attorney. *See, e.g., September Grand Jury,* 590 F.2d at 248 n. 4 (recusal did not amount to rendering the United States Attorney's office "vacant" under 28 U.S.C. § 546). One court has noted, and this Court concurs, that the "wiser course" is to involve the United States Attorney at each step of the process. *In re DiBella,* 499 F.2d at 1177.[12] While strict compliance with the procedural and jurisdictional requirements is preferred, this Court nonetheless is constrained to agree with the United States Attorney's office that the intent of the statute is satisfied when a validly appointed and authorized United States Attorney makes the public interest certification with the approval of the Attorney General's office and the application is then submitted by that same individual only now in the role of the Acting United States Attorney—an individual who, at a minimum, is a duly authorized Assistant United States Attorney.[13]

Accordingly, the immunity order shall issue.

---

**12.** One could argue that an application by the United States Attorney, him or herself, is essential at this third step in that it reaffirms the certification of the need for the immunity in the interest of the public. This function moves beyond a concern in theory to one of practical importance when a considerable period of time passes between the initial approval and the application to the district court. Given the "ministerial" role of the district court, Working Papers, *supra* p. 5, at 1435, however, the Court does not find such an argument persuasive, especially where as here the application was made within days of the approval by the Attorney General's office.

The Court does note that one district court has gone so far as to hold that attempts to circumvent the provisions of §§ 6002–03 through the use of letters of informal immunity is illegal. *United States v. Kilpatrick,* 594 F.Supp. 1324, 1349 (D.Colo.1984). *But see United States v. Winter,* 663 F.2d 1120, 1133 (1st Cir.1981), *cert. denied,* 460 U.S. 1011, 103 S.Ct. 1250, 75 L.Ed.2d 479 (1983) (informal immunity not per se unlawful).

**13.** Beyond concluding that the office of United States Attorney is presently vacant, this Court expresses no opinion on the propriety of the Acting United States Attorney both requesting that the Attorney General authorize that an application for immunity be presented to the court (step 1) and then presenting it in his capacity as Acting United States Attorney (step 3). A review of immunity orders granted in the past year indicates that the office of the United States Attorney does not consider that such a process comports with the statutory mandate.