**In re GRAND JURY, Appellee,**

v.

**Douglas GASSIRARO, Appellant.**

No. 90–1988.

United States Court of Appeals, First Circuit.

Submitted Nov. 1, 1990.

Decided Nov. 15, 1990.

Robert L. Sheketoff and Zalkind, Sheketoff, Wilson, Homan, Rodriguez & Lunt on brief, for appellant.

Wayne A. Budd, U.S. Atty., and James D. Herbert, Asst. U.S. Atty., on brief, for appellee.

Before BREYER, Chief Judge, CAMPBELL and SELYA, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment of contempt imposed on a grand jury witness, following his refusal to comply with a court order directing him to testify. Appellant raised an eleventh-hour claim that the anticipated questioning was derived from illegal electronic surveillance, and he now challenges the adequacy of the government's denial of this claim. We find appellant's challenge unavailing and therefore affirm the contempt citation.

## I.

■ The grand jury investigation, being conducted jointly by the federal Bureau of Alcohol, Tobacco and Firearms ("ATF") and the Massachusetts State Police, concerns unlawful dealing in firearms. Appellant was first called as a witness on June 14, 1990, at which time he invoked his fifth amendment privilege against self-incrimination and refused to testify. The government successfully applied for an order of use immunity under 18 U.S.C. §§ 6002 & 6003, and appellant was recalled on August 30, 1990. At this point, he for the first time advanced his electronic surveillance claim and again refused to testify.[1] The district court held an immediate hearing, at which appellant explained that several years earlier he either had received a notice of interception or had seen transcripts of intercepted conversations with his name on them. He argued that, under 18 U.S.C. § 3504(a), the government was obligated to deny the existence of such surveillance, or to assert that it had been lawfully conducted, or to establish that the results thereof had not been employed in any way in the instant investigation.[2]

■ The government chose this last course. It acknowledged that, between June and September 1985, monitoring of certain telephone lines had been conducted by the New England Organized Crime Narcotics Task Force, involving officers of the Massachusetts State Police and the Drug Enforcement Administration, as part of a narcotics investigation of appellant's father. It further acknowledged that, although appellant was not a target of this surveillance, his voice had been overheard. And while the government suggested that such surveillance had been lawful, it did not attempt to document this fact.[3] Rath-

---

**1.** A court may hold in civil contempt any grand jury witness who "refuses to testify without just cause shown to comply with an order of the court to testify...." 28 U.S.C. § 1826(a). A showing that the questioning of such a witness was based on illegal electronic surveillance constitutes "just cause" for refusing to testify and precludes a finding of contempt. *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972); *In re Grand Jury Proceedings*, 786 F.2d 3, 7 (1st Cir.1986) (per curiam).

**2.** As here applicable, 18 U.S.C. § 3504(a) requires that, "upon a claim" by a grand jury witness that the questioning is based on illegal electronic surveillance, "the opponent of the claim shall affirm or deny the occurrence of the alleged unlawful" surveillance.

**3.** In their affidavits, described more fully below, the several government investigators and attorneys characterize the 1985 surveillance as "court-authorized." They also indicate that information derived therefrom was subsequently used at the trial of appellant's father (resulting in his conviction for narcotics offenses)—with the implication that the surveillance was determined to have been legal. The authorizing documents, however, have not been turned over to appellant for inspection as required by *In re Lochiatto*, 497 F.2d 803, 807–08 (1st Cir.1974); *see also In re Grand Jury*, 851 F.2d 499, 500 (1st Cir.1988) (per curiam); *In re Mintzer*, 511 F.2d 471, 472 n. 1 (1st Cir.1974) (per curiam), and no effort has been made to document any judicial finding of legality.

er, the government responded that the 1985 surveillance had not been used in any way in the course of the current investigation.

Backing up this contention are affidavits from each of the individuals in charge of the investigation (from each of the government agencies involved): Special Agent Thomas Horan of ATF, Sergeant William McGreal of the Massachusetts State Police, and Assistant United States Attorneys Carole Schwartz and James Herbert.[4] All four make the identical denial: no electronic surveillance has been employed even indirectly in the decision to call appellant as a witness, in the formulation of questions to be posed to him, or in the overall conduct of the investigation. AUSA Schwartz (who was out of the country when her affidavit was prepared) relies on her personal knowledge alone in offering this assurance. The other three base their denials, not only on personal knowledge, but also on a search of the files of their respective agencies, and on inquiries to all co-workers involved, regarding the possible use of surveillance information in the instant investigation.

More particularly, all four affiants state that the decision to call appellant as a witness was based solely on an interview which Sergeant McGreal held with him on February 6, 1990, and that no electronic surveillance was used as a basis for the decision to conduct such interview. The questions to be posed to appellant, according to AUSA Schwartz's statements at the hearing, pertain solely to the content of that interview; according to all four affidavits, they were derived exclusively from the investigatory efforts of ATF and the State Police. Finally, all but Sergeant McGreal disclaim any familiarity with the 1985 surveillance; Agent Horan states he first learned of it on the date of the contempt hearing, AUSA Schwartz states she has not reviewed any material therefrom, and AUSA Herbert states that he only "ha[s] been informed" that it occurred. Sergeant McGreal, by contrast, acknowl-

edges having participated in the surveillance. He emphasizes, however, that the 1985 narcotics investigation and the instant firearms investigation are entirely unrelated, and that the former was completed several years before the alleged offenses here occurred. And he reiterates that the 1985 surveillance played no role in his decision to interview appellant, in the formulation of questions to be posed, or in any other aspect of the current investigation.

## II.

Such a denial of the use of surveillance is plainly sufficient. We have stated that a § 3504 response ordinarily must include "an explicit assurance indicating that all agencies providing information relevant to the inquiry were canvassed." *In re Quinn*, 525 F.2d 222, 226 (1st Cir.1975); *accord, e.g., In re Pantojas*, 628 F.2d 701, 704 (1st Cir.1980); *In re Santiago*, 533 F.2d 727, 729 (1st Cir.1976). Here, each agency involved in the investigation has been heard from directly. We have also indicated that, in general, "those responding [must have been] in a position, by firsthand knowledge or through inquiry, reasonably to ascertain whether or not relevant illegal activities took place [or were used]." *In re Quinn*, 525 F.2d at 225; *accord, e.g., In re Hodges*, 524 F.2d 568, 569–70 (1st Cir.1975). Here, those responding plainly have firsthand knowledge as they are the principals leading the investigation; in addition, they examined the files of their respective agencies and made further inquiries before preparing their affidavits. And we have said it is "important" that the attorney conducting the grand jury investigation has submitted an affidavit, as he or she is likely to know the source of "the evidence on which the questions are based." *In re Tse*, 748 F.2d 722, 728 (1st Cir.1984); *accord, e.g., In re Grand Jury Proceedings*, 786 F.2d 3, 7 (1st Cir.1986) (per curiam). Here, both government attorneys have done so.

---

**4.** According to their affidavits, Agent Horan and Sergeant McGreal have had principal responsibility within their respective agencies for this investigation since its inception; no other governmental agency has contributed information to the instant investigation or participated in the preparation for the grand jury proceedings. AUSA Schwartz conducted the grand jury investigation until September 5, 1990, at which time AUSA Herbert took over.

In the face of this all-encompassing denial, the fact that Sergeant McGreal participated in the 1985 surveillance, and subsequently sought out appellant for an interview which prompted his appearance before the grand jury, causes only momentary pause. To be sure, an affidavit from Sergeant McGreal detailing the investigative basis for the interview (submitted ex parte and *in camera* if necessary, *see id.* at 5; *In re Tse*, 748 F.2d at 727) could have eliminated any suspicion of a link to the earlier surveillance. Yet given the unrelated nature of the two investigations, and especially given the lapse of time between the two, Sergeant McGreal's emphatic denial that the surveillance contributed in any way to his decision to interview appellant is, we think, sufficient.

### III.

 We should add that none of these affidavits was presented to the district court; we directed the government to submit them to this court during the pendency of the appeal. The district court rested its decision on the sworn testimony of Agent Horan and the unsworn representations of AUSA Schwartz (which, in each case, corresponded closely to what was later conveyed in affidavit form). The government contends that this evidentiary presentation to the district court constituted an adequate § 3504 denial. It notes, correctly, that this court has adopted a flexible approach under which the scope and specificity of the government's response are keyed to the timing and concreteness of the witness's claim. *See In re Tse*, 748 F.2d at 728 ("government must be accorded some flexibility in meeting last minute claims"); *In re Hodges*, 524 F.2d at 570–71 (same). In light of what it describes as the vague and eleventh-hour nature of appellant's claim, the government maintains its initial disclaimer was sufficient and our call for supplementary affidavits unnecessary.

 Yet we need not resolve this issue, as the government's subsequent affidavits have "put to rest any lingering doubts we had about the adequacy of [the] response." *In re Tse*, 748 F.2d at 728 (footnote omitted). Our directive that the government supplement its response at the appellate level, while admittedly unusual, is not without precedent: we did the same in both *Tse*, *id.* at 728–29, and *United States v. Doe*, 451 F.2d 466, 467 (1st Cir.1971). In *Doe*, where the disclaimer was deficient prior to the case reaching this court, we vacated the contempt order with instructions that the district court could again hold the witness in contempt for refusing to testify on this ground. In *Tse*, by contrast, we affirmed the contempt order, citing the "eleventh hour raising of the wiretap issue and the reasonableness and arguable adequacy of the government's attempts to meet its burden." 748 F.2d at 728. We affirm the order in the instant case as well, not only because of the belated nature of the claim, as in *Tse*, but because the government, we think, was not fully responsible for the arguable deficiencies in its initial response. Sergeant McGreal was present at the contempt hearing, and the record reveals that the government was prepared to put him on the stand. Instead, following Agent Horan's testimony, the district court deemed the government's response sufficient and terminated the hearing. Under such circumstances, we cannot fully fault the government for not insisting on the presentation of further evidence.[5]

The order of contempt is *affirmed.*

---

**5.** Under 28 U.S.C. § 1826(b) and Loc.R. 9, appeals of orders of confinement for civil contempt are to be decided within thirty days of filing. As has occasionally been the case in the past, *see United States v. Doe*, 460 F.2d 328, 332 n. 3 (1st Cir.1972), this deadline has not been met here. The thirty-day limit is nonjurisdic-

tional. *See, e.g., In re Grand Jury Proceedings*, 757 F.2d 108, 110 n. 1 (7th Cir.) (collecting cases), *cert. denied*, 471 U.S. 1018, 105 S.Ct. 2025, 85 L.Ed.2d 306 (1985). Some courts have a practice of releasing confined contemnors whose appeals cannot be decided within thirty days. *See, e.g., Melickian v. United States*, 547

F.2d 416, 419 (8th Cir.), *cert. denied,* 430 U.S. 986, 97 S.Ct. 1684, 52 L.Ed.2d 381 (1977). Others reject such a practice. *See, e.g., In re Sealed Case,* 794 F.2d 749 (D.C.Cir.) (per curiam) (relying on liberal standard for bail in this context), *cert. denied,* 479 U.S. 1021, 107 S.Ct. 679, 93 L.Ed.2d 729 (1986); *In re Grand Jury Proceedings,* 757 F.2d at 110 n. 1 (noting that appeal was decided within thirty days of filing of appellant's brief); *In re Grand Jury Proceedings,* 605 F.2d 750 (5th Cir.1979) (per curiam) (entry of order extending time period); *see also, e.g., United States v. Pacella,* 622 F.2d 640, 642 n. 2 (2d Cir.1980) (appeal decided within thirty days with explanatory opinion issued later).

Primarily because of a delay in the forwarding of the record from the district court, this appeal was not brought to our attention until 41 days after the filing date. An expedited briefing schedule was immediately ordered. Although appellant had moved (unsuccessfully) for bail below, he did not pursue it on appeal, and he filed a motion before us for a stay pending appeal (which we denied) only fifty days after his appeal was filed (and on the same day his brief was filed). Under these unusual circumstances, we announce no across-the-board rule. We need not decide whether appellant's actions constitute a waiver of the thirty-day rule. *See In re Santiago,* 533 F.2d at 728 n. 2 ("As there were technical difficulties in preparing the parties' briefs in this case, the time limit was waived."). We simply echo the Second Circuit's admonition in *In re Grand Jury Proceedings,* 776 F.2d 1099, 1102 (1985), that both parties—the government as well as the appellant—"give us prompt notice when an appeal is covered by this statute."